UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JENNIFER WHEELER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 2:11-cv-00057 |
| v. | ) |
| | ) Judge Sharp |
| BRAD STAFFORD, in his individual | ) |
| and official capacity as Sheriff of Jackson | ) |
| County, Tennessee; CASIE HARRIS, in | ) |
| her individual capacity; CHARLES | ) |
| COLLIER, in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Defendants Brad Stafford ("Stafford"), in his individual and official capacity as Sheriff of Jackson County, Tennessee; Casie Harris ("Harris"), in her individual capacity; and Charles Collier ("Collier"), in his individual capacity (collectively the "Defendants") filed a Motion for Summary Judgment (Docket Entry No. 15), to which Plaintiff Jennifer Wheeler ("Plaintiff" or "Wheeler") filed a response in opposition (Docket Entry No. 24), and Defendants filed a reply (Docket Entry No. 28).

## I. FACTUAL BACKGROUND

Plaintiff was hired as a correctional officer for the Jackson County Sheriff's Department by Harris on March 8, 2010.[1] As part of her job, Plaintiff was required and scheduled to complete certain training for her employment. Prior to attending her training, on July 16, 2010, Harris received a report that Correctional Officer, Chastity Montgomery ("C. Montgomery"),

---
[1] Unless otherwise noted, the facts are drawn from *Defendants' Statement of Undisputed Facts* and Plaintiff's responses thereto (Docket Entry Nos. 20 and 25) as well as declarations and other related exhibits. Plaintiff has failed to provide a "concise statement of [] additional facts" as required by Local Rule 56.01(b). *See* LR 56.01. In any event, and based upon the record, the specific facts set forth in this Court's summary appear to be a fair characterization of the facts relevant to the issues presented in the filings.

1

had informed Corporal Lisa Montgomery ("L. Montgomery") (a family member who worked a different shift) of concerns regarding Plaintiff. L. Montgomery then told Sgt. Deborah Gillihan ("Gillihan") of the concerns. Gillihan then called Harris and informed her that she needed to speak with L. Montgomery as she had possible information about Plaintiff sleeping with an inmate.

Upon being informed of the allegations, Harris met with L. Montgomery the next morning, July 17, 2010. (Docket Entry No. 19, Harris Decl., ¶ 5). Harris then called C. Montgomery to come in and give a voluntary statement, which she did. (*Id*., ¶ 6, Exhibits A and B). In her statement, C. Montgomery stated that she felt her life was at risk working with Plaintiff; and that she had been told by a female inmate, Sonya Boyington ("Boyington"), that Plaintiff had been passing mail between inmates, she brought them cigarettes, and she was writing sexual letters to an inmate. (*Id*., ¶ 7, Exhibit B). On July 17, 2010, Harris called Plaintiff to her office. Harris informed Plaintiff that she had statements that Plaintiff was having a relationship with an inmate and that she was writing him letters.[2] Harris then informed Plaintiff that she had the option of resigning or being terminated. Plaintiff then stated that she guessed she had nothing to say. (Docket Entry No. 17-7; Wheeler Depo., pp. 31-32). Plaintiff never denied the allegations.[3] (Wheeler Depo., p. 27; Harris Decl. ¶ 13). Plaintiff further advised Harris that she would have to fire her. At that time, Harris terminated Plaintiff.

After the termination, Plaintiff met with Marty Hinson ("Hinson"), a Jackson County Sheriff's Department employee, who is a friend of Plaintiff's husband. (Wheeler Depo., pp. 54, 58-60). Hinson followed up with the investigation and found the inmate (who had been released)

---

[2] Harris considered the allegations of sexual misconduct to be a huge concern for the jail, since Jackson County had endured former Sheriff Kenneth Bean being indicted on thirteen counts of improper sexual conduct toward inmates a few years before the above allegations. (Harris Decl., ¶ 8). Jackson County had terminated and prosecuted another correctional officer for "improper conduct" shortly before this incident. (*Id.*).

[3] Plaintiff denied the allegations for the first time in her deposition testimony. *See* (Wheeler Depo., pp. 41, 50).

and interviewed him. (*Id.* at pp. 65-66). The inmate denied a relationship and stated that he had never received any letter from Plaintiff. (*Id.*) However, Plaintiff was not reinstated by Jackson County. (*Id.* at pp. 67-68).

Once Sheriff Brad Stafford took office on September 1, 2010, Plaintiff requested her job back. Shortly thereafter, Stafford was asked by Plaintiff to look into the matter of her termination. At that time, there were no openings with the department and she was not hired. However, given the totality of the allegations raised during the termination, Sheriff Stafford felt that Plaintiff was not a good fit for the department. (Docket Entry No. 18, Stafford Decl., ¶ 8).

Plaintiff filed her lawsuit on May 27, 2011, asserting the following:

> Casie Harris, acting under the authority of the Sheriff of Jackson County, Tennessee, wrongfully fired the Plaintiff, Jennifer Wheeler, on the bogus and unproven claim that Jennifer Wheeler had an improper relationship with an inmate. Despite Mrs. Wheeler's request for a hearing to clear her name, neither Sheriff Brad Stafford nor his predecessor Charles Collier gave Mrs. Wheeler an opportunity to hear any evidence against her, nor to be heard as to why she should be deprived of her employment and her reputation.

(Docket Entry No.1, Complaint at ¶ 1). Plaintiff seeks $50,000 in compensatory damages, $100,000 in punitive damages, and attorneys' fees pursuant to 42 U.S.C. § 1983. (*Id.* at pp. 5-6).

## ANALYSIS

Plaintiff asserts Defendants have violated her rights to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and seeks redress pursuant to 42 U.S.C. § 1983. Defendants have moved for summary judgment.

**I. Summary Judgment Standard**

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Covington v. Knox County School Sys.*, 205 F.3d 912, 914 (6th

3

Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. *See Martin v. Kelley*, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Covington*, 205 F.3d at 914 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. 42 U.S.C. § 1983 Claim

The Fourteenth Amendment forbids state actors from depriving individuals of life, liberty or property without due process of law. *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002) (citing *Mertik v. Blalock,* 983 F.2d 1353, 1359 (6th Cir. 1993)). A plaintiff may bring suit under 42 U.S.C. § 1983 for a deprivation of his constitutionally protected liberty and property interests. *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989) (citing *Ramsey v. Bd. of Educ.*, 844 F.2d

1268, 1271 (6th Cir. 1988)). In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court indicated that procedural due process requirements apply to deprivation of liberty and property interests encompassed by the fourteenth amendment and that, when those interests are implicated, "the right to some kind of hearing is paramount." *Id.* at 569–70, 92 S.Ct. at 2705 (footnote omitted). Here, Plaintiff alleges she was entitled to a name clearing hearing, requested a name clearing hearing, and was denied such hearing in violation of her due process rights. (Complaint at ¶ 1).[4]

An individual has a liberty interest in her "reputation, good name, honor, and integrity" and "in being free to move about, live, and practice his profession without the burden of an unjustified label of infamy." *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996) (quoting *Chilingirian*, 882 F.2d at 205); *see also Ludwig v. Bd. of Trustees*, 123 F.3d 404, 410 (6th Cir. 1997) ("An injury to a person's reputation, good name, honor, or integrity constitutes the deprivation of a liberty interest when the injury occurs in connection with an employee's termination."). A plaintiff may establish a deprivation of a liberty interest in employment by demonstrating the public disclosure of stigmatizing information that "so negatively affects his or her reputation that it effectively forecloses the opportunity to practice a chosen profession." *Joelson*, 86 F.3d at 1420.

Where an employee has such a liberty interest, the employee may not be deprived of that interest without being afforded notice and opportunity to be heard and to refute the charges against him, if the employee has requested a "name-clearing hearing." *Ludwig*, 123 F.3d at 410.

---

[4] In Section 1983 actions, the first question a court must ask is: who did the plaintiff sue and in what capacity? *See Carroll v. Knox County Bd. of Educ.*, 2010 WL 2507046 at *5 (E.D. Tenn. 2010). Ordinarily, this is an important question because it determines what the plaintiff must prove, and what defenses are available. *Id*. However, in this case the status of Defendants is irrelevant. As will be explained later, Plaintiff's Section 1983 claim based on the deprivation of her liberty interest is dismissed because Plaintiff waived her right by failing to request a "name-clearing" hearing. Thus, Plaintiff's claim based upon the deprivation of property and liberty interests is dismissed regardless of who Plaintiff sued, or in what capacity.

"It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process." *Quinn*, 293 F.3d at 320; *see also Brown v. City of Niota*, 214 F.3d 718, 723 (6th Cir. 2000) ("Once a plaintiff has established the existence of [a liberty interest], he is entitled to a name-clearing hearing if he requests one.").

In the Sixth Circuit, to survive a motion for summary judgment, a plaintiff must show that there is a genuine issue of material fact regarding each of the following elements:

> (1) The stigmatizing statements were made in conjunction with termination from employment;
>
> (2) The employer has not merely alleged improper or inadequate job performance, incompetence, neglect of duty, or malfeasance, but rather has charged the plaintiff with a wrong that has a stigmatizing impact;
>
> (3) The employer's stigmatizing statements or charges must be made public by the employer;
>
> (4) The plaintiff must show that the charges made against him by his employer were false; and
>
> (5) The public dissemination of the false information by the employer must have been voluntary.

*Quinn*, 293 F.3d 315, 320 (6th Cir. 2002); *Brown v. City of Niota*, 214 F.3d 718, 722-23 (6th Cir. 2000). The Sixth Circuit added another requirement in *Quinn*: a plaintiff must request a "name-clearing" hearing from her employer. *Id.* at 322. This request must be made after the plaintiff has been demoted or fired. *Id.* at 320. In *Quinn,* the Sixth Circuit held that a plaintiff's failure to request a name-clearing hearing waived a § 1983 action based upon the deprivation of a liberty interest without due process of law. *Id.* at 332 (holding that a plaintiff "is required to show that he requested a name-clearing hearing and was denied that hearing.") (citations omitted). In other words, "a plaintiff's failure to request a name-clearing hearing is fatal to a claim alleging a deprivation of a liberty interest without due process." *Id.* This is because "[i]t is the *denial of the*

6

*name-clearing hearing* that causes the deprivation of the liberty interest without due process." *Id.* at 320 (emphasis added).

Plaintiff alleges that she requested a name clearing hearing "in substance" without using the exact words. (Docket Entry No. 24 at 14). Defendants counter that this is not the fact, nor is what Plaintiff stated to Defendants sufficient to place them on notice that she was, in fact, requesting a name clearing hearing. (Docket No. 28 at 4).

In support for Plaintiff's contention, she provides two instances, wherein she requested such hearing. The first is her deposition testimony, wherein she testified as follows:

> Q. During any of those meetings, did you request a hearing?
>
> A. No, not really. All I wanted was to find out what the evidence was. I was trying to find out exactly – who was saying what about me and what they had to back it up with.

(Docket Entry No. 24 at 14) (citing Wheeler Depo., p. 72). As for the second instance, Plaintiff argues the following:

> The record is clear that Jennifer Wheeler attempted to have the Sheriff's Department look into the name smearing that occurred when she was terminated. (Wheeler Depo., p. 69-74). She stated she wanted the Sheriff to "look into it to see what he could find. If it was stated or proved that I was not guilty, if I could get my job back." It is submitted that this statement is synonymous with saying "I want to clear my name and get my job back." The fact of whether a name clearing hearing was requested is disputed making summary judgment inappropriate.

(*Id.*).[5]

Judge Aleta Trauger provided further guidance on this very issue in *Williams v. City of Franklin, Tenn.*, 3:08-CV-0164, 2009 WL 1033179 (M.D. Tenn. Apr. 16, 2009) *amended in part*, 3:08-CV-0164, 2009 WL 1421176 (M.D. Tenn. May 20, 2009), holding,

> The Sixth Circuit Court of Appeals has provided some guidance as to what constitutes a sufficient request for a name-clearing hearing. In *Ludwig*, the court held that a letter alleging that the employer had denied the employee due process

---
[5] These mere two illustrations are the extent of Plaintiff's argument. *See* (Docket Entry No. 24 at pp. 14-15).

7

> did not constitute a request for a name clearing hearing. *Ludwig*, 123 F.3d at 411. In *Quinn*, the court considered a case where the employee had informed his employer that he was innocent of the charges against him and requested that the employer delay deciding whether he should be fired until an audit and grand jury investigation were concluded. *Quinn*, 293 F.3d at 324. Although the plaintiff in *Quinn*, unlike the plaintiff in *Ludwig*, asserted only a liberty interest claim and not a property interest claim, the court nevertheless held that the employee's statements did not constitute a request for a name-clearing hearing because they did not sufficiently apprise the employer that he sought to clear his name. *Id.* at 324-25.

*Williams v. City of Franklin, Tenn.*, 3:08-CV-0164, 2009 WL 1033179 (M.D. Tenn. Apr. 16, 2009) *amended in part*, 3:08-CV-0164, 2009 WL 1421176 at *6 (M.D. Tenn. May 20, 2009)).

Even when construed in the light most favorable to Plaintiff, the Court finds Plaintiff's statements did not constitute a request for a name-clearing hearing because they did not sufficiently apprise the employer that she sought to clear her name. *See Quinn*, 293 F.3d at 324-325. Because Plaintiff has not shown that she requested a name-clearing hearing, she has waived her § 1983 claim based upon the deprivation of a liberty interest.

Assuming, *arguendo,* that Plaintiff requested a name-clearing hearing, her liberty interest claim would still fail. For purposes of summary judgment, Defendants contest only the third and fifth elements [(3) The employer's stigmatizing statements or charges must be made public by the employer… (5) The public dissemination of the false information by the employer must have been voluntary], wherein they contend Plaintiff "clearly cannot establish" these elements. They contend the only publication certain to have occurred is Plaintiff's own publication to friends and acquaintances – and without said evidence of publication, Plaintiff cannot establish a voluntary publication. (Docket Entry No. 16 at 8). Arguing therefore, Plaintiff cannot establish that she was entitled to a name clearing hearing in this case. (*Id.*).

In contrast, Plaintiff alleges that Defendants have made public the allegations that she had an inappropriate relationship with an inmate, and her "reputation has been smeared" accordingly.

8

(Docket Entry No. 24 at 13). The four examples of such publication, which have been provided, were to her husband, the District Attorney, the Department of Labor, and to her personnel file. (*Id.* at 11-13). These do not constitute publication under *Quinn*. *Quinn*, 293 F.3d at 320.

Based on the specific facts presented in this case, the Court finds Plaintiff has not presented evidence of deprivation of her constitutionally protected liberty interests sufficient to create a genuine issue of material fact. Consequently, Plaintiff's claim cannot survive a motion for summary judgment.

## **CONCLUSION**

For all of the reasons stated, Defendants' Motion for Summary Judgment (Docket Entry No. 15) will be granted and this case will be dismissed with prejudice.

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE